UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA SWISTAK,

          Plaintiff,

v.

MICROSOFT CORPORATION,

          Defendant,
_____

**COMPLAINT**

Civ. Cas. No.:

**JURY TRIAL DEMAND**

## NATURE OF THE CASE

1.     This is an action brought by the Plaintiff, SANDRA SWISTAK,("Plaintiff"), the member of a protected class, for age discrimination pursuant to 29 U.S.C. §621 *et. seq.,* the Age Discrimination in Employment Act,("ADEA"), as amended (covers ages 40 years of age or older in employment); retaliation pursuant to 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1964 ("Title VII"); and claims under the New York State Human Rights Law, Executive Law Section 290, *et seq.* ("NYSHRL") for age discrimination and retaliation.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3.     The Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims under state law.

4.        Venue is proper pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE EXHAUSTION

5.        Plaintiff filed a charge of discrimination with the
          Equal Employment Opportunity Commission New York
          District Office on or about November 17, 2011,
          alleging age discrimination in violation of the ADEA,
          and discrimination and retaliation under Title VII.

6.        A Right to Sue Notice was issued by the Equal
          Employment Office on December 11, 2012.

7.        Less than ninety (90) days have elapsed since the
          Plaintiff's receipt of that Notice, and her subsequent
          filing of the instant complaint in this matter.

8.        Accordingly, Plaintiff has administratively exhausted
          her claims.

## PARTIES

9.        Plaintiff is an individual female over the age of 40,
          born on July 11, 1958, who, at all times relevant
          herein, is a 53 year old former employee of the
          Defendant, and a resident of the County of Monroe,
          State of New York.

10.     Upon information and belief, the Defendant is a business corporation organized and existing under the laws of the State of New York.

### FACTS

11.     Plaintiff, a female over the age of 40, was born on July 11, 1958.

12.     For all relevant times set forth in this Complaint, the Plaintiff 53 years old.

13.     Plaintiff was formerly employed by the Defendant since on or about February 2008 as a "Commercial Account Manager."

14.     Plaintiff was originally hired by Supervisor Anne Curran; under Ms. Curran's reign, Plaintiff had zero performance issues, and even received the Defendant's "*100% Sales Achievement Award*" that year.

15.     Ms. Curran left Microsoft in 2009, and was replaced by Supervisor Karl Shultz, who would become Plaintiff's primary tormentor.

16.    At the time Ms. Curran departed, Plaintiff was 87% of quota, and a top performer in the district.

17.    As further proof of that fact, in 2009 Microsoft announced a layoff which effected 5% of the workforce: although multiple account mangers were unfortunately let go, *Plaintiff was not*.

18.    Plaintiff maintained an "above average" work performance record during her employment with the Defendant prior to her retaliatory termination on September 13, 2011.

19.    In fact, in 2011, Plaintiff achieved 105% of quota, again, with no performance issues, and was yet again the recipient of Microsoft's "*100% Sales Achievement Award*" in 2011.

20.    During this period of Plaintiff's employment, however, she developed a good faith basis to believe she had been subject to both sex and age discrimination.

21.    First, Plaintiff was the oldest female in her department.

22.      Second, Plaintiff was the top performer in her
         district, having exceeded her quota in the several
         years that she was employed by Defendant.

23.      Notwithstanding, on August 2, 2010, Plaintiff's male
         Supervisor Karl Schultz sent her a confidential email
         stating, *for the first time*, that her job performance
         was "*unacceptable*," and that her continued employment
         with the Defendant was "*at risk*."

24.      On August 2, 2010, Plaintiff replied to this email, and
         copied several top managers within Microsoft.

25.      Plaintiff explained to these high-ranking managers that
         she believed Supervisor Schultz's comments were
         unfounded, that she was being unfairly judged, and that
         she was being intimidated with threats of termination.

26.      On April 8, 2011, Supervisor Shultz sent Plaintiff a
         note asking her, for the first time, to create a
         "Development Plan."

27.      Plaintiff created this "Development Plan" in accordance
         with Defendant's standards.

28.     However, despite crafting the Development Plan in accord with Defendant's standards, Supervisor Shultz sent her various ambiguous emails throughout the day, scrutinizing and criticizing her plan.

29.     For example, Supervisor Schultz kept changing the requirements for the "development plan," making it difficult to understand at best, and impossible to comply with, at worst.

30.     Plaintiff made several earnest attempts to accomplish the purported goals of the "Development Plan," no matter how confusing the guidelines had become under Supervisor Shultz's directives.

31.     However, Plaintiff had a good faith basis to believe that Supervisor Schultz was purposefully setting Plaintiff to fail, as a way and means to terminated her because of her age and sex, for the reasons explained below.

32.     On April 15, 2011, Supervisor Schultz called Plaintiff for a "one-on-one meeting" where he completely degraded Plaintiff personally, and degraded her work.

33.     During the course of that meeting, Supervisor Shultz
        stated:

> *"you are like a chef that got hired by mistake.  The*
> *restaurant needed a chef to cook chicken, steak,*
> *seafood and other foods, and all you can do is cook*
> *fish. We don't have time to wait and learn for you to*
> *cook chicken, steak, seafood and you need to learn to*
> *cook all the items on the menu immediately."*

34.     Supervisor Schultz's highly subjective, non-objective
        comment shocked the Plaintiff since her February, 2011
        mid-year was review was "above average;" all of a
        sudden, Plaintiff was suddenly incompetent.

35.     Later that day, Supervisor Schultz sent Plaintiff
        another email wherein he stated that her "development
        plan" was *not up to [his] standards."*

36.     Moreover, he degraded Plaintiff's work and experiences
        once again in a very gratuitous and condescending tone.

37.     No other co-worker was subject to Supervisor Schultz's
        berating behavior.

38.      On April 16, 2011, Plaintiff emailed both Supervisor
         Schultz and Human Resources to complain of Supervisor
         Schultz's conduct.

39.      In that April 16, 2011 email, Plaintiff addressed the
         fact that Supervisor Schultz was setting her up for
         failure, and that his continued harassment had to stop;
         Plaintiff further pleaded that Supervisor Schultz stop
         treating her differently from other co-workers, and
         from creating a hostile work environment.

40.      Neither Supervisor Schultz nor Human Resources took any
         remedial action on Plaintiff's behalf, and Plaintiff's
         complaints were largely ignored.

41.      On May 10, 2011, in apparent retaliation to Plaintiff's
         email, Supervisor Schultz, for the first time ever,
         unilaterally changed the title of the "Development
         Plan," to *Performance Plan."

42.      Supervisor Schultz began nit-picking, scrutinizing, and
         criticizing every move Plaintiff made, and constantly
         gave Plaintiff negative comments and feedback regarding
         her work in an effort to "file build" a justification

for her termination.

43.     Supervisor Schultz continued to threaten Plaintiff's
        job.

44.     Neither Supervisor Shultz nor Human Resources ever
        responded to Plaintiff's serious and legitimate
        complaints about differential treatment and abuse by
        Supervisor Shultz.

45.     On May 13, 2011, Plaintiff again complained to
        Supervisor Schultz about his constant harassment, and
        the toll it was taking on her.

46.     Plaintiff pleaded with Supervisor Schultz to give
        Plaintiff *some* clarification on her work, but nothing
        changed, and no remedial action was ever taken on
        Plaintiff's behalf.

47.     On May 15, 2011, Supervisor Schultz sent Plaintiff a
        letter erroneously accusing her of derogatory and
        inflammatory comments.

48.     On May 18, 2011, Plaintiff submitted the work she had
        done with regard to the "Performance Plan."

49.     Once again, Supervisor Shultz degraded her work and
        Plaintiff personally.

50.     On May 30, 2011, Plaintiff filed a formal complaint
        with the Microsoft Diversity Department regarding her
        Supervisor Schultz's relentless, retaliatory,
        disparate, and harassing behavior against her on the
        basis of sex and age.

51.     Additionally, Plaintiff requested a new supervisor or
        another position within Respondent as a way to remedy
        the harassment.

52.     Plaintiff was informed that Microsoft would "conduct a
        formal investigation," commencing on or about June
        2011.

53.     Three months later, in or about the first week of
        September 2011, Diversity informed Plaintiff that her
        investigation found no discrimination or hostility, and
        Plaintiff's request for a new manager was denied.

54.      Plaintiff asked her for a detailed report from the
         investigation, however Plaintiff was denied all access
         to the investigation.

55.      Shortly thereafter, *i.e within days*, on September 13,
         2011, Plaintiff was terminated in retaliation for her
         good faith complaints of discrimination in the
         workplace.

56.      The Plaintiff, the eldest female in her department was
         terminated on the basis of her age, and age was the
         "but for" reason for her termination.

57.      Plaintiff was fired in close temporal proximity with
         her good faith complaints of discrimination in the
         workplace, made directly to Microsoft's Diversity
         Department as per Microsoft's clearly delineated human
         resource polices.

58.      Defendant had no legitimate business reason for the
         actions it took against the Plaintiff, a long term,
         high performing employee of Microsoft.

59.     Any reason proffered by the Defendant is merely a
        pretext for unlawful discrimination.


### FIRST CAUSE OF ACTION
### Violation of the Age Discrimination in Employment Act

60.     Plaintiff repeats and incorporates by reference the
        allegations stated above as if they were set forth in
        full herein.


61.     The employment practices of the Defendant described
        above harm older employees of the defendant and favor
        younger employees.  The practices so described are not
        based upon a reasonable factor other than age, and age
        is in fact the "*but for*" reason for the actions taken
        herein, particularly in light of the fact that
        Plaintiff was the eldest female in her department.


62.     Defendant purposefully engaged in age discriminatory
        practices with the full knowledge that in so doing, it
        was discriminating against its older employees, without
        regard for the rights of those employees under the
        ADEA.

63.     Defendant, through its high ranking supervisory employees, unduly scrutinized, engaged in file building, and terminated Plaintiff on account of her age, and thereby violated her right to equal employment opportunity as protected by the ADEA.

64.     As such, Plaintiff is entitled to liquidated damages and attorney fees under the ADEA.

## SECOND CAUSE OF ACTION
### Violation of the NYSHRL

65.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

66.     Defendant, through its agents, engaged in a pattern of unlawful age discrimination based on age in that Plaintiff was subject to repeated and undue performance scrutiny, file building, and then terminated, while other substantially younger employees were maintained, and promoted regularly, in violation of the NYSHRL. This claim does not raise a novel or complex issue of law.

67.     Defendant at all times relevant herein had actual and constructive knowledge of the conduct described above.

68.     As a result of the discrimination perpetrated and maintained by defendant and to Plaintiff, and their failure to protect the Plaintiff from discrimination, Plaintiff suffers emotional distress.

69.     Defendant violated the NYSHRL by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of the defendant as described above.

70.     Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate age discrimination from the workplace and to prevent it from occurring in the future.

71.     As a direct and proximate result of defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered mental anguish and emotional anguish and emotional anguish and emotional distress, and she has suffered and will continue to suffer a loss earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## THIRD CAUSE OF ACTION

### Retaliation Under TITLE VII

72.     Plaintiff repeats and re-alleges by reference each and
        every allegations contained in  the above stated
        paragraphs and incorporates the same as though fully
        set forth herein.

73.     During the year of 2011, Plaintiff engaged in a *myriad
        of forms of protected activity* when she in good faith
        informed both Supervisor Shultz directly and her
        employer that she was subject to discrimination based
        on sex, the last complaint of which occurred May 30,
        2011 to the Defendant's Diversity Department.

74.     That by formally protesting the conditions of her
        work place with management and supervisory personnel
        directly on the basis of sex, Plaintiff engaged in
        protected activity under 42 U.S.C. § 2000 (e).

75.     Thereafter, Plaintiff was subject to adverse actions
        as stated above, culminating in the Plaintiff's
        termination, that were materially adverse and that
        would dissuade a reasonable employee such as the
        Plaintiff from making further complaints of
        discrimination both in the workplace and to the EEOC.

76.     As a direct and proximate result of defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer emotional distress, and a loss of earnings, and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at the time of trial.

77.     As a further and proximate result of the defendant's violations of Title VII, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Accordingly, Plaintiff requests that attorney fees be awarded.

78.     Defendants conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employers' economic power over its employees. Consequently, Plaintiff is entitled to exemplary damages.

## FOURTH CAUSE OF ACTION

## Retaliation under the NYSHRL, EXECUTIVE LAW, *§290, et seq.,*

79.     Plaintiff repeats and re-alleges by reference each
        and every allegations contained in the above
        captioned  paragraphs  and incorporates the same as
        though fully set forth herein.

80.     During the year of 2011, Plaintiff engaged in a
        *myriad of forms of protected activity* when she in good
        faith informed both Supervisor Shultz directly and her
        employer that she was subject to discrimination based
        on sex, the last complaint of which occurred May 30,
        2011 to the Defendant's Diversity Department.

81.     That by formally protesting the conditions of her
        work place with management and supervisory personnel
        directly, Plaintiff engaged in protected activity
        under the New York State Human Rights Law, § 290 *et
        seq.*

82.     Thereafter, Plaintiff was subject to adverse actions
        as stated above, including termination, that were
        materially adverse and that would dissuade a
        reasonable employee such as the Plaintiff from making
        further complaints of discrimination in the
        workplace.

83.      As a direct and proximate result of Defendant's
         willful, knowing and intentional discrimination
         against her, Plaintiff has suffered and will continue
         to suffer severe mental and emotional anguish, and
         she has suffered and will continue to suffer a loss
         of earnings and other employment benefits and job
         opportunities.  Plaintiff is thereby entitled to
         general and compensatory damages in amounts to be
         proven at the time of trial.


     **WHEREFORE,** Plaintiff respectfully request the Court to
enter judgment in her favor, consistent with the above
referenced causes of action.

DATED:      February 22, 2013
            Rochester, New York

                        By:
                            *CHRISTINA A. AGOLA, PLLC*

                            /s/Christina A. Agola , Esq.

                            _____
                            Christina  A. Agola, Esq.

                            *Attorneys for Plaintiff*
                            *SANDRA SWISTAK*

                            1415 Monroe Avenue
                            Rochester, New York 14618
                            585.262.3320 (o)
                            585.262.3325 (f)
                            cagola@wnycivilrights.com